M. R. SMITH ET AL. V. N. H. JOHNSON ET AL.

FILED FEBRUARY 5, 1895.    No. 5138.

1. Absconding Debtors: ATTACHMENT. In a legal sense, a party absconds when he hides, conceals, or absents himself clandestinely with the intent to avoid legal process. *Gandy v. Jolly*, 34 Neb., 536, followed.

2. Attachment: SUFFICIENCY OF AFFIDAVIT: CONSTRUCTIVE SERVICE: VENUE. An affidavit filed in an action before a jus-

tice of the peace to obtain the issuance of a writ of attachment, contained the allegation "that said defendants have absconded with intent to defraud creditors," and the summons issued in the case was returned indorsed "I could not find the defendants within my county," with signature of the officer. *Held*, That the action was properly instituted in the county of the debtor's former residence and where property could be levied upon, and that constructive service was warranted and proper under the facts as they then appeared in the case.

3. **Finding and Judgment: Entry:** ATTACHMENT: JUSTICE OF THE PEACE. A finding by a justice of the peace, in an attachment suit, of the sum due plaintiff, an assessment of plaintiff's recovery, and an order of sale of the attached property, is but a judgment in form against defendants, and where the only relief sought is to subject the attached property to the payment of the debt, is sufficient as an entry, both in form and in substance, and is not void.

4. **Notary Public:** CERTIFICATE TO AFFIDAVIT: EVIDENCE. The certificate of a notary public to an affidavit is presumptive evidence of the facts stated in such certificate, including the statement that affiant signed the affidavit.

5. **Exemptions:** SUFFICIENCY OF CLAIM: DUTY OF SHERIFF: HOLDING LEVY. It is without the province of an officer holding property under levy of writ, pending sale by order of the the court in attachment proceedings, to question the validity or sufficiency of a schedule and affidavit, made according to the provisions of the statute governing such proceedings, and filed by the attachment debtor for the purpose of setting aside the property levied upon as exempt.

6. EXECUTIONS: FAILURE OF SHERIFF TO CALL APPRAISERS: DAMAGES. Where personal property is seized under an execution or writ of attachment against a debtor who has neither lands, town lots, nor houses subject to exemption, and an inventory under oath is made and filed by such debtor, as provided by section 522 of the Code, it is the duty of the officer holding the writ to call appraisers to determine the value of the property, and the neglect or refusal of the officer to do so will not deprive the debtor of his exemptions, but he may sue for the value of the property. (*Bender v. Bame*, 40 Neb., 521.)

7. **Sheriffs and Constables:** ACTION FOR SELLING EXEMPT PROPERTY: EVIDENCE. Where in an attachment case the defendant files the inventory under oath prescribed by statute to avail himself of the exemptions allowed by section 521 of the

Code, and the officer holding the writ fails or refuses to cause the property to be appraised and allow the debtor to select therefrom such property and to the value as the law provides he may, but sells the same regardless of the application for the exemption, in an action by the debtor against the officer, to recover the value of the property, the inventory and its accompanying affidavit are competent evidence to prove the facts they were intended to show within the scope and intent of the law providing for them, and the purpose for which they were formed.

8. ———: ———: ———. The verdict in this case *held* to be against the weight of the evidence and manifestly wrong.

ERROR from the district court of Buffalo county. Tried below before HAMER, J.

There is a statement of the case in the opinion.

*Dryden & Main*, for plaintiffs in error:

The failure to file an affidavit for publication deprived the justice of the peace of jurisdiction and his judgment was void. (Maxwell, Justice Practice [ed. 1889], 330; Code, secs. 59, 60, 78, 932; *Blair v. West Point Mfg. Co.,* 7 Neb., 147.)

Had the justice of the peace acquired jurisdiction, no valid personal judgment based upon constructive service could have been rendered. (*Smith v. Griffin,* 59 Ia., 409; *Lutz v. Kelly,* 47 Ia., 307.)

When the exemption affidavit was filed it was the duty of the officer holding the writ to call appraisers and set aside the exempt property. (Code, sec. 522; *People v. Mc-Clay,* 2 Neb., 9; *State v. Cunningham,* 6 Neb., 92; *State v. Wilson,* 31 Neb., 462.)

*Greene & Hostetler, contra:*

The judgment was not void because of a failure to file an affidavit for publication. (*State v. Rankin,* 33 Neb., 266; *Paine v. Mooreland,* 15 O., 444; *Parker v. Miller,* 9 O., 114; *Mitchell v. Eyster,* 7 O., 257; *Voorheese v. Jackson,* 10 Pet. [U. S.], 449.)

HARRISON, J.

The plaintiffs commenced an action in the district court of Buffalo county, alleging in the petition filed therein that they were husband and wife, residents of the state of Nebraska; and that M. R. Smith was the head of a family; that on or about June 11, 1889, they were the owners and in possession of certain goods and chattels, a list of which was attached to the petition, from which it appeared that it was composed almost entirely of household furniture, etc., and all of the value of $137.10; that on or about said 11th day of June, 1889, N. H. Johnson instituted an action against the plaintiffs herein, before one William K. Learn, a justice of the peace of said county, and caused to be issued a writ of attachment, under and by virtue of which E. A. Cutting, at the instance and request of said N. H. Johnson, seized the property of plaintiffs as hereinbefore described; that no service of summons, or other service, was ever had upon plaintiffs herein (defendants in the attachment case) in such action, but that such proceedings were had in that case that, on the 25th day of July, 1889, a pretended judgment was rendered against the plaintiffs herein; that the same was wholly void, for the reason that the court had acquired no jurisdiction over the persons of these plaintiffs (defendants in said suit); that after the rendition of said judgment, M. R. Smith, one of the plaintiffs herein, filed in the office of William R. Learn, the justice of the peace before whom such judgment was obtained, an inventory and affidavit, filed with the petition, marked "Exhibit A," claiming all of the property hereinbefore described exempt from sale under execution or attachment proceedings; "that afterwards, and on or about the 25th day of August, 1889, the said defendant E. A. Cutting, by and at the request of the said N. H. Johnson, proceeded to sell the property by virtue of a pretended order of sale issued by the said Wm. R. Learn. The plaintiffs charge

the fact to be that neither of the said plaintiffs herein was the owner of any land, town lots, or houses subject to an exemption as a homestead, and the property so levied upon and sold as aforesaid was specifically exempt from attachment, and that said defendants herein have by virtue of the proceedings hereinbefore set forth obtained possession of said goods and chattels and unlawfully and wrongfully converted them to their own use, to the damage of the plaintiffs in the sum of $137.10. . Wherefore the said plaintiff prays for judgment against the said defendants for the sum of $137.10, with interest from the 11th day of June, 1889, at seven per cent per annum, and for costs of suit."

The answer of the defendants was as follows: "Come now the said defendants, and for answer to complaint herein, say that the property described in said petition was seized by an order of attachment by a court of competent jurisdiction and went to final hearing and said attachment was, upon due consideration of said court, sustained and an order of sale of said property issued in due form, and said property was under said order of sale duly sold, or at least a part thereof. Defendants deny each and every allegation in said complaint not herein admitted, and ask to go hence with their costs." There was a reply filed denying each and every allegation of new matter contained in the answer. A trial of the issues before the court and a jury resulted in a verdict for the defendants, upon which, after a motion for new trial was heard and overruled, judgment was entered, and the plaintiffs bring the case here for review. The affidavit filed in the case before the justice of the peace, to obtain the issuance of the writ of attachment, contained the following, with other statements as grounds therefor: "He also makes oath that said defendants have absconded with intent to defraud their creditors."

From the record of the proceedings in the case before the justice of the peace, introduced in evidence in this action,

Smith v. Johnson.

·it appears that summons was issued and returned indorsed:
" I could not find the defendants within my county.  E. A.
Cutting, Constable ;" that the writ of attachment was
duly served by seizing the property described in the peti-
·tion in the case at bar.   The case was continued for the
forty days prescribed by law, and service was had by pub-
lication, and on the day set for hearing judgment was
entered against the plaintiffs, the entry of the same being
as follows :  "July 25, 1889, 9 o'clock A. M., the cause
came on for hearing upon the bill of particulars and the
·evidence, on consideration whereof I find that there is due
from the defendant to the plaintiff the sum of $18.27.   It
·is therefore considered by me that the said N. H. Johnson
·recover from the said M. R. Smith and Mrs. M. R. Smith
the said sum of $18.27 and his costs herein expended, taxed
by me at $13.85, and the constable is ordered to advertise
·and sell in the manner provided by law so much of the
property heretofore attached as will satisfy said judgment
·and costs."   Immediately following this entry, as shown
by the transcript of the docket, follow these statements :
" July 25, 1889, defendants filed motion and affidavit to
discharge property exempt.   August 10, 1889, at plaint-
iff's request, issued order of sale and gave same to Constable
Cutting ;" and it further appears that the attached prop-
·erty was sold, the proceeds therefrom amounting to $67.85.

It is argued by attorneys for plaintiffs that the judgment
in this case was void for two reasons : First, no affidavit
was filed setting forth the facts necessitating service by
publication ; second, no personal judgment could be or
·should have been rendered, based upon constructive service.
With reference to the first of these objections it will suffice
to say that in the affidavit for attachment in the case before
the justice it was alleged that the debtor had absconded
with intent to defraud his creditors, and by the return of
·the officer to the summons issued in the case it was dis-
·closed that the defendants in the action could not be found

in the county. Combined, these facts constituted a basis
warranting or authorizing constructive service. "To ab-
scond means to go in a clandestine manner out of the jur-
isdiction of the courts, or to be concealed in order to avoid
their process; to hide, conceal, or absent oneself clandes-
tinely with intent to avoid legal process." (*Bennett v.
Avant,* 2 Sneed [Tenn.], 153; *Hoggett v. Emerson,* 8 Kan.,
262; *Ware v. Todd,* 1 Ala., 200; *Fitch v. Waite,* 5 Conn.,
121.) "In a legal sense a party absconds when he hides,
conceals, or absents himself clandestinely with the intent
to avoid legal process." (*Gandy v. Jolly,* 34 Neb., 536, and
citations in the opinion on page 539.) "A party may ab-
scond, and subject himself to the operation of the attach-
ment law against absconding debtors, without leaving the
limits of the state." (*Field v. Adreon,* 7 Md., 209.) In
*Gandy v. Jolly* it was held in regard to the commencement
of an action, similar to the one instituted against plaint-
iffs herein, before the justice of the peace: "An ordinary
action must be brought in the county where the defendant
resides, or service of summons can be made upon him; but
where a debtor absconds, and an attachment is issued
against his property, the action may be brought in the
county of his former residence, and where the debtor's
property may be found." Section 932 of the Code pro-
vides as follows: "If the order of attachment is made to
accompany the summons, a copy thereof, and the sum-
mons shall be served upon the defendant in the usual man-
ner for the service of a summons, if the same can be done
within the county, and when any property of the defend-
ant has been taken under the order of attachment, and it
shall appear that the summons issued on the action has
not been, and cannot be, served on the defendant in the
county, in the manner prescribed by law, the justice of the
peace shall continue the cause for a period of not less than
forty days, nor more than sixty days, whereupon the
plaintiff shall proceed for three consecutive weeks to pub-

lish in some newspaper printed in the county, or if none be printed therein, then in some newspaper of general circulation in said county, a notice stating the names of the parties, the time when, by what justice of the peace, and for what sum said order was issued, and shall make proof of such publication to the justice, and thereupon said action shall be proceeded with the same as if summons had been duly served." Coupling the rules of law as decided by the courts (this and others), and their interpretation of the legal signification of the terms "abscond," or "absconding," as applied to a debtor by our law governing the subject of attachment, with the provisions of section 932, just quoted, and applying them to the facts in this case, fully answer the objection that no affidavit was filed with the justice, setting forth the necessary facts to call for service of publication. The attachment affidavit described the debtor as an absconding one, and the return of the officer to the summons showed that service could not be had in the county. This was sufficient to warrant the constructive service of which the plaintiffs complain.

In regard to the second objection, viz., that no personal judgment could or should have been rendered, and that the remedy afforded should have been confined to a finding of the amount due, and an order subjecting the property to sale, and applying the proceeds to the payment of the debt, it appears, by reference to the entry which the justice did make, hereinbefore quoted, that he made a finding of the sum due the plaintiff in the action, assessed the amount of the plaintiff's recovery, and ordered the sale of the attached property. This was but a judgment in form against the defendants in the suit, and the only relief sought was to subject the attached property to its payment, and for this purpose, as an entry, it was sufficient, both in form and in substance. If void or inoperative in any part or to any degree, it was in its validity as a judgment against the debtors personally, and as no attempt was or is being made

to so enforce it or to further enforce it than against the property over which the court had obtained jurisdiction by the writ of attachment, its validity or force as a personal judgment against the debtor is not involved, and need not be considered.

It is further insisted by the plaintiffs that, inasmuch as they had filed with the justice of the peace an inventory of all the property owned by them, and claimed the same as exempt, it should have been appraised, and if found to be of less value than $500, returned to them, and this not having been done, this action against the defendants herein, for conversion of the property, arose in their favor. Sections 521 and 522 of the Code, under head of "Exemptions," read as follows:

"Sec. 521. All heads of families who have neither lands, town lots, or houses subject to exemption as a homestead, under the laws of this state, shall have exempt from forced sale on execution the sum of five hundred dollars in personal property.

"Sec. 522. Any person desiring to avail himself of the exemption as provided for in the preceding section must file an inventory, under oath, in the court where the judgment is obtained, or with the officer holding the execution, of the whole of the personal property owned by him or them at any time before the sale of the property; and it shall be the duty of the officer to whom the execution is directed to call to his assistance three disinterested freeholders of the county where the property may be, who, after being duly sworn by said officer, shall appraise said property at its cash value."

M. R. Smith, one of the plaintiffs herein, filed an inventory, as required by section 522 above quoted, with the justice before whom the attachment case and proceedings therein were had. It is contended by attorneys for defendants that there was no proof that the signature to the affidavit filed with the justice was Smith's signature. The

certificate of the notary public before whom the affidavit
was made was presumptive evidence of the genuineness of
the signature. (Compiled Statutes, ch. 61, sec. 6.) It is
further insisted that the schedule of the property and state-
ments made in the oath thereto were not evidence of the
facts therein contained. The facts set forth in the inven-
tory and affidavit were so arranged and sworn to in com-
pliance with the provisions of the statute relating to the
subject as a condition precedent to the appraisal of the prop-
erty, and its purpose was to furnish sufficient evidence of
the facts embodied therein to require the officer to act, and
cause the property to be appraised, and when filed it was
not within the province of the officer to question its valid-
ity or the correctness in matter of substance relating to the
merits of the application. In the case of the *State v. Cun-
ningham*, 6 Neb , 92, it is said: "The officer cannot ques-
tion the correctness of the inventory. If the debtor has
real estate which is exempt under the homestead law, or
other personal property than that contained in his list, such
personal property is liable to be seized for his debts, and he
may be prosecuted for perjury. But when an inventory,
under oath, is made by the debtor and filed with the officer
holding the execution or order of attachment, he must call
appraisers to ascertain the value of the property seized."
(See, also, Waples, *Homestead & Exemption*, 854; *Douch
v. Rahner*, 61 Ind., 64.) The inventory and oath, possess-
ing the force and strength as testimony indicated by the
statute, being that upon which the appraisal proceedings
were to be based, and the property selected not to exceed
the value of $500 to be delivered to the party making and
filing the same, were, we think, competent evidence of the
facts which they were intended to prove. (*In re Harris*, 22
Pac. Rep. [Cal.], 867.) The presumption of the genuine-
ness of the signature attached to the oath, and the evidence
of the facts contained in the inventory, and the affidavit
verifying it, were not controverted by any of the evidence,

and this being true, the verdict of the jury was against the weight of the evidence, and in fact clearly and manifestly wrong and without testimony to sustain it.

It is now the firmly established rule in this state that "Where personal property is seized under an execution against a debtor who has neither lands, town lots, nor houses subject to exemption, and an inventory, under oath, is made and filed by such debtor, as provided by section 522 of the Code, it is the duty of the officer holding the writ to call appraisers to determine the value of the property, and the neglect or refusal of the officer to do so will not deprive the debtor of his exemptions, but he may sue for the value of the property." (*Bender v. Bame,* 40 Neb., 521; *Hamilton v. Fleming,* 26 Neb., 240; *Cunningham v. Conway,* 25 Neb., 615; *Schaller v. Kurtz,* 25 Neb., 655; *Kriesel v. Eddy,* 37 Neb., 63.)   We mean to be understood by our statement that the oath and inventory are competent evidence in such a case as is the one now under consideration, that when proof has been made of the judgment and the issuance of the writ of execution, or the commencement of an action and issuance of attachment process therein and the levy of either writ as the case may be and seizure of the property thereunder, or these facts have been admitted as in this case, and the plaintiff (claimant in the exemption proceedings) produces an inventory and the oath thereto sufficient in form and substance to meet the requirements of our Code in relation to such papers, he can introduce them in evidence, and when introduced they establish that he had done all that the law required of him to entitle him to the appraisal provided by statute, and to receive from the officer holding the writ the property seized and held thereunder, or a portion thereof not exceeding in value the sum of the statutory exemption; and this being sufficient to entitle him to demand the property from the officer, we think is, or should be when coupled with proof or admission of the further facts of the sale of the property and ap-

propriation of the proceeds, sufficient, in the absence of any evidence contradicting or controverting, or tending so to do, the statement contained in the oath and inventory, to entitle him, in an action of conversion against the officer and other parties who have taken part in the proceedings or knowingly shared in the funds derived from the sale of the property, to a verdict and judgment for the value of the property so appropriated to the extent of the exemption.     If this is not true, then the officer, by refusing to proceed with the appraisal or to deliver the property to the claimant when the necessary oath and inventory have been filed, can force the claimant into court, cause him the expense of the lawsuit and probable loss of the property accorded him by statute without such suit because he is unable to attend or for some reason may not be able to produce the testimony required to prove the facts, the burden of proof of which would be forced upon him.·  This would clearly be a violation of the spirit and intent of the exemption provisions of the law.     Furthermore, the view we have herein expressed does not in any degree change the relative rights of the parties to the contract which created the indebtedness. The creditor did not, or could not depend upon the exempt property as ever being available for the payment of the debt or grant the credit with any such object in view. Hence he is placed in no worse position than he assumed by his own choice at the time of the creation of the debt. It follows that the judgment of the district court must be reversed and the case remanded.

REVERSED AND REMANDED.