| | |
|---|---|
| 113 | 101 |
| 115 | 462 |
| 113 | 101 |
| 125 | 60 |
| 113 | 101 |
| s71NW | 505 |
| 132 | 4218 |
| 113 | 101 |
| 144 | 4597 |
| 113 | 101 |
| 152 | 337 |
| 152 | 1338 |

## McMORRAN *v.* MOORE.

1. INSOLVENT DEBTORS—ASSIGNMENT FOR BENEFIT OF CREDITORS— WHAT CONSTITUTES.

An insolvent debtor deeded all of his real estate, except his homestead, to a firm to which he was indebted in a large amount, and at the same time executed to a member of the firm, as trustee for certain specified creditors, a chattel mortgage covering all of his personal property. This mortgage made no provision for the return of any surplus to the mortgagor. *Held*, that the instruments did not constitute an assignment for the benefit of creditors.

2. ATTACHMENT—DISSOLUTION—BURDEN OF PROOF.

Upon proceedings to dissolve an attachment, the plaintiff has the burden of showing, affirmatively, sufficient cause for issuing the writ, existing and continuing up to the time of the hearing of the application to dissolve.

3. SAME—ABSCONDING—MEANING OF TERM.

"Absconding," within the meaning of the attachment laws, means something more than a mere temporary absence for health. It involves the design to withdraw clandestinely, to hide or conceal one's self, for the purpose of avoiding legal proceedings.

4. FRAUDULENT CONVEYANCES—EVIDENCE.

The mere fact that a transfer or series of transfers by a debtor to his creditor will necessarily hinder or delay other creditors, or prevent the collection of their claims, does not render the same fraudulent as a matter of law.

5. ATTACHMENT—DISSOLUTION—EVIDENCE.

Although, to justify the issuance of a writ of attachment on the ground of a fraudulent disposition of property, the intent to defraud must have existed at the time the writ issued, the subsequent conduct of the parties may properly be considered, upon an application to dissolve the writ, for the purpose of throwing light upon such intent.

*Certiorari* to St. Clair; Vance, J. Submitted April 30, 1897. Decided May 25, 1897.

Attachment proceedings by David McMorran and another against David Moore. Plaintiffs bring *certiorari* to review an order dissolving the writ. Reversed.

*Sparling, Law & Moore* (*H. W. Stevens*, of counsel), for appellants.

*Avery Bros. & Walsh* (*Phillips & Jenks*, of counsel), for appellee.

HOOKER, J. Upon application of the defendant, the circuit court dissolved an attachment, and the plaintiffs bring the case here for review upon the findings of the circuit judge. These are voluminous, and need not be incorporated in the opinion. The principal questions that counsel for the plaintiffs raise are:

*First.* That the findings show that certain instruments amount to a common-law assignment for the benefit of creditors, with a preference.

*Second.* That they constituted grounds for attachment.

In brief, the finding shows that the defendant, David Moore, was engaged in the mercantile business upon his own account at Port Huron. He was also an equal partner with his brother Thomas in a store at St. Clair, and both concerns were insolvent. On January 25, 1896, David Moore owed F. Saunders & Co. about $6,000, of which $622.85 was due from the partnership of T. & D. Moore. At the same time, David Moore owed the plaintiffs $1,386.02, and large sums to other creditors. On that day he executed to F. Saunders & Co. six warranty deeds and two quitclaim deeds, covering all of his real estate except his homestead (which was mortgaged), for an expressed total consideration of $4,100. On the same day, he and his wife executed to Dixon, a member of the firm of F. Saunders & Co., as trustee, a chattel mortgage covering all of his personal property, in trust for the security of certain creditors therein named. This mortgage made no provision for the return of any surplus to the mortgagor. When executed, these instruments were

handed to Thomas Moore, and David and his wife started for New Mexico. Thomas delivered the deeds and mortgage three days later.

We think that these instruments should not be held to be an assignment for creditors with a preference. The omission from the mortgage of a provision for the return of a possible surplus did not make the transfer absolute. In *Austin* v. *First Nat. Bank*, 100 Mich. 618, an instrument without a defeasance was held a mortgage, and what was there said is applicable to this instrument. It is definitely settled in Michigan that a debtor has a lawful right to prefer a creditor, and that the courts are not alert to deprive him and the preferred creditor of their rights, where the intention of the debtor is manifest, and the instruments do not legally constitute an assignment, and there is an absence of fraud. See *Sheldon* v. *Mann*, 85 Mich. 265; *Warner* v. *Littlefield*, 89 Mich. 329; *National Bank of Oshkosh* v. *National Bank of Ironwood*, 100 Mich. 485. The discussion in these cases fully covers the subject.

It is further contended that the attachment should not have been dissolved, because the evidence showed that the transfers were fraudulent and that the defendant had absconded. In applications for the dissolution of attachment, the burden is on the plaintiff in attachment to show, affirmatively, sufficient cause for issuing the writ, existing and continuing up to the time of hearing of the application to dissolve. *Macumber* v. *Beam*, 22 Mich. 403; *Brown* v. *Blanchard*, 39 Mich. 790; *Folsom* v. *Teichner*, 27 Mich. 107. It therefore was necessary for the plaintiffs to convince the circuit court of the facts relied upon, viz., that the defendant had absconded to the injury of his creditors, or that he had fraudulently disposed of his property with intent to defraud his creditors, or one of the other causes set forth. The court found explicitly that David Moore, in going to New Mexico, did not abscond, but went for his health, intending to return; also, that the making of the deeds was not with an intent to hinder, delay, or defraud

creditors.   The finding of fact is quite full in respect to the
minutiæ of the transaction.   So far as it is necessary to find
a specific intent, the conclusion of the circuit judge cannot
be reviewed by us.   "Absconding," in the eye of the law,
means something more than a temporary absence for
health.   It involves a design to withdraw clandestinely,
to hide or conceal one's self, for the purpose of avoiding
legal proceedings.   The court not only found an absence
of such intent, but the facts found are consistent with the
absence of such intent.

Upon the question of fraud we may say substantially
the same.   The facts found do not conclusively establish
an intent to hinder, delay, or defraud creditors.   Coun-
sel assign error upon certain isolated facts, substantially
asking us to say that such facts, in and of themselves, are
grounds for attachment, for the reason, apparently, that
they conclusively show an intent to defraud; such, for
instance, as the "making and delivery of the eight deeds,"
the "including the partnership account in the chattel
mortgage," and other things which need not be mentioned
at length.   Some of these were facts which collectively or
singly might have led the court to find the presence of a
fraudulent intent.   But we cannot say that they con-
clusively show it.   Nor can we say that they are neces-
sarily grounds for attachment, unless we are to adopt
plaintiffs' claim that where an act will necessarily hinder
or delay creditors, or possibly prevent their collection
of their claims, it is a legal fraud.   Such a rule un-
doubtedly applies in some classes of cases, as where a
voluntary conveyance is made, but we think it cannot be
said of this case.

It seems that, after David Moore left, he executed
another mortgage to Dixon, and consented to a sale of
the partnership business.   It also appeared that Dixon
had not taken possession of the stock of goods under his
mortgage up to the time of hearing, and that certain
dealings were had with the property by T. Moore, the
defendant's agent, by F. Saunders & Co.'s consent.   The

judge returns that he has "not considered the effect of this chattel mortgage, or the manner of dealing with the mortgaged property, for the reason that the facts justifying the issuance of the writ of attachment must exist at the time it issues, and not afterwards." While the intent to defraud must have existed at the time the writ issued, the subsequent conduct of the parties to the transaction was admissible to throw light upon the intent with which the instruments were made and accepted, and, had there been a jury, it would have been error to exclude them. The judge seems to have excluded them as immaterial to the issue. While we cannot say that they should have affected the result, we cannot say that they should not. It was the duty of the judge to consider them. Inasmuch as he did not, we have no alternative but to reverse the order of dissolution, with costs, and direct a new trial. Such an order is therefore made.

The other Justices concurred.