PEOPLE v LITTERAL

1. CRIMINAL LAW—ABSCONDING—DEFINITIONS—STATUTES.

The term abscond as used in the absconding-on-bond statute means to go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process and fleeing from arrest or prosecuting officers of a state (MCLA 750.199a; MSA 28.396[1]).

2. CRIMINAL LAW—ABSCONDING—FELONY—CRIMINAL PROCEEDING.

The elements which the prosecution must prove before a defendant may be convicted of the crime of absconding while on bond for a felony are that the defendant did abscond and that he did so from a criminal proceeding wherein a felony was charged.

3. CRIMINAL LAW—ABSCONDING—STATUTES—UNAVAILABILITY OF DEFENDANT—FELONY.

It makes little difference under the statute making it a felony to abscond while on bond for a felony whether the defendant is a totally irresponsible person, who recklessly and foolishly fails to make himself available while felony charges are pending against him, or he actively and intentionally flees the pursuit of the law (MCLA 750.199a; MSA 28.396[1]).

4. CRIMINAL LAW—ABSCONDING—UNDERLYING FELONY—NOTICE OF TRIAL—AVOIDANCE OF NOTICE.

A defendant convicted of absconding while on bond for a felony cannot complain of lack of notice of the trial date for the underlying felony where the defendant's conduct during the time his trial was pending amounted to a course of conduct designed to prevent receipt of notice and the defendant, in effect, had become a fugitive.

# Appeal from Lenawee, Kenneth G. Prettie, J.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 21 Am Jur 2d, Criminal Law §§ 286, 287, 305.

Absence of accused at return of verdict in felony case. 23 ALR2d 456.

Voluntary absence of accused when sentence is pronounced. 6 ALR2d 997.

Submitted February 8, 1977, at Lansing. (Docket No. 26075.) Decided April 18, 1977.

Robert Litteral was convicted of absconding while on bond for a felony. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

*Richard L. Roble,* for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, P. J. Defendant was convicted on August 27, 1975, by the court without a jury of absconding while on bond for a felony, MCLA 750.199a; MSA 28.396(1). The charges arose out of defendant's failure to appear for trial on an uttering and publishing charge on October 22, 1974.[1] Defendant was sentenced to serve 2-1/2 to 4 years in prison upon conviction herein. Defendant appeals as of right.

Defendant appears to be afflicted with an uncontrollable wanderlust. Testimony adduced at trial indicated that defendant has been independent since age 13 or 14, and has traveled extensively throughout the country by himself. At the time the uttering and publishing charge became a "problem" defendant was 17 years old and once again on "vacation", this time in Florida. Upon investigation by Florida authorities and the F.B.I. it was discovered the defendant was to be charged in Michigan on the uttering and publishing

---

[1] Defendant was convicted on the uttering and publishing charge and appeal is now pending.

charge. Defendant then returned from Florida and his parents retained counsel for him.

On the original trial date on the uttering and publishing charge, defendant's retained counsel moved to withdraw and the trial court granted the motion and appointed new counsel for defendant. The new attorney talked briefly with defendant and gave him or his mother a slip of paper with the attorney's name and phone number. Defendant did not attempt to contact counsel and counsel's attempts to contact defendant through his mother were futile. Apparently, defendant was again off on an excursion to see the U.S.A.

Actually, defendant left Michigan two days after his counsel was appointed. The defendant flew back to Florida and soon after began a leisurely trip through the south and the west, eventually hitchhiking to California. Several months after his rescheduled trial date, defendant was arrested for carrying a concealed weapon and grand theft-auto in Las Vegas, Nevada. Defendant was notified that he was still wanted on the uttering and publishing charge and he subsequently returned to Michigan.

Defendant disclaimed fleeing the state to avoid prosecution. He testified at his bench trial that he thought he had two or three months after his new attorney was appointed and, therefore, took the "vacation" to get the trial off his mind. He did indicate that he did not advise his parents or his attorney that he was leaving, and that he left most of his possessions behind, that he left entirely unannounced and, furthermore, did not contact anyone in Michigan until his arrest in Las Vegas, approximately three months later. Counsel on appeal suggests that although defendant's behavior was erratic, we should take cognizance of his age and behavioral history and find the defendant did not violate the statute. This we cannot do.

Surprisingly, we have found no Michigan authority construing this statute. In addition, other "bond jumping" or "bail jumping" statutes are not blessed with a similarity of language. Michigan's absconding-on-bond statute provides in essential part as follows: "Any person who shall abscond on or forfeit a bond given in any criminal proceedings wherein a felony is charged shall be deemed guilty of a felony." MCLA 750.199a; MSA 28.396(1). Black's Law Dictionary, 4th ed, 1951, p 21, defines this term abscond as follows:

"To go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. *Malvin v Christoph,* 54 Iowa 562; 7 NW 6 [1880]. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process. *Smith v Johnson,* 43 Neb 754; 62 NW 217 [1895]. Postponing limitations. *Keck v Pickens,* 207 Ark 757 [760]; 182 SW2d 873, 875 [1944]. Fleeing from arresting or prosecuting officers of this state. Code Cr Proc art 8. *State v Berryhill,* 188 La 549; 177 So 663 [1937]."

See *McMorran v Moore,* 113 Mich 101; 71 NW 505 (1897). See also, *State v Croy,* 32 Wis 2d 118; 145 NW2d 118 (1966). Defendant does not challenge the validity of this statute, but maintains that this statute requires a "specific intent" which the trial court did not and could not find from the facts adduced herein.

The difference between "specific intent" and "general intent" is one of difficult delineation. See *People v Lerma,* 66 Mich App 566; 239 NW2d 424 (1976), *lv den,* 396 Mich 848 (1976). Although the trial court indicated herein that the Legislature had not made intent an element of the crime, the court did find that defendant did "purposefully absent himself from this jurisdiction" and that

"the defendant did indeed abscond". We must assume that the trial court had investigated authority as to the definition of abscond, including *McMorran v Moore, supra,* at 104, which defined the term as involving "a design to withdraw clandestinely, to hide or conceal one's self, for the purpose of avoiding legal proceedings". The definition of "abscond" is settled and the requirements for conviction under the statute are clear. We agree with the trial court that the necessary elements which the prosecution must prove are that the defendant did abscond and that he did so from a criminal proceeding wherein a felony was charged.

Because this is a case of first impression we will set out the factors in this case which illustrate the propriety of the trial court's finding that defendant did in fact abscond and purposefully absent himself from the jurisdiction. Defendant executed a personal recognizance bond on July 5, 1974. Defendant was represented by counsel throughout the proceedings. After his first attorney withdrew, either defendant or his mother was presented with a piece of paper with the new counsel's name and phone number. Defendant did have some discussion of this case with his new attorney. Two days after this court appearance, defendant took a plane to Florida. He did not notify his parents, his attorney, or the court of his return to Florida. Defendant also left most of his possessions behind, including clothing. Defendant did not make any efforts to contact anyone regarding his trial until he was arrested in Las Vegas and needed help from his parents, almost three months after he had left Michigan. The following attempt to explain his absence clearly illustrates the propriety of defendant's conviction under this statute:

"*Q. [Mr. Shaw, Assistant Prosecuting Attorney]:* How long was it from the time you left back in September of 1974, until your mother and father first found out where you were?

"*A.* December 14th or 15th.

"*Q.* Why was it that all during that period of time you never bothered to contact either of your parents?

"*A.* I was on my own.

"*Q.* What did you think the Court was going to do back here while you're gone with regard to that criminal charge that was pending?

"*A.* Well, after I was arrested in Las Vegas—

"*Q.* I'm not talking about after that. I'm talking about this time when your parents didn't know where you were. They found out where you were when you're arrested in Las Vegas, didn't they?

"*A.* When I made a phone call up here.

"*Q.* All right; before that, before that, what did you think was happening back here in Michigan with regard to your criminal charge?

"*A.* I had no idea, except that there would possibly be a bench warrant issued at one time.

"*Q.* And did you really care what was happening back here in Michigan with regard to your criminal case?

"*A.* Yes, sir, I did.

"*Q.* Then I ask you again, why didn't you attempt to contact the Court, your lawyer, or your parents?

"*A.* I was out of State, a great distance away."

This statute was enacted to ensure that criminal defendants not impede the judicial process by failing to be present at court proceedings. The problem was serious enough that the Legislature made such a violation a felony. Whether a defendant is a totally irresponsible person, who recklessly and foolishly fails to make himself available while felony charges are pending against him, or actively and intentionally flees the pursuit of the law should make little difference under this stat-

ute.[2] Nevertheless, the trial court found that defendant *purposefully absented himself and absconded.* As illustrated, the trial court's finding has ample support on the record.

Defendant also argues that he was not given proper notice of his trial date. One term of defendant's recognizance was to "personally appear in accordance with any and all orders and directions relating to my appearance in this cause as may be given". Defendant's counsel was given a trial date and tried several times to locate defendant. Defendant's mother was given actual notice of the trial date and she was also unsuccessful in locating defendant. Notice of trial was sent to the address given by defendant as his residence, his parents' address, and was returned unopened. No one knew where defendant could be located. He took no steps to let anyone know where he was. How anyone could have located defendant has not been explained to this Court.

In addition, the court found that defendant's conduct amounted to a course of conduct designed to prevent receipt of notice. *United States v Cohen,* 450 F2d 1019 (CA 5, 1971). Defendant, in effect as found by the trial court, had become a

---

[2] *See* Wisc Stat Ann 943.21 providing for a criminal penalty for one who "intentionally absconds". *State v Croy,* 32 Wis 2d 118; 145 NW2d 118 (1966). We suspect that conviction under the Michigan statute would be valid upon proof of a general criminal intent, *i.e.,* the intent to do the physical act. *See People v Lerma,* 66 Mich App 566; 239 NW2d 424 (1976), *lv den,* 396 Mich 848 (1976), and LaFave & Scott, Criminal Law, p 343. Had the Legislature intended a higher standard they could have required some specific intent standard. *See also,* the Federal bond jumping statute which requires a wilful act, formerly 18 USC 3146, *United States v Hall,* 346 F2d 875 (CA 2, 1965), *cert den,* 382 US 910; 86 S Ct 250; 15 L Ed 2d 161 (1965). This statute was repealed by the Bail Reform Act, chapter 207, 18 USCA, and was replaced by 18 USC 3150. *See United States v DePugh,* 434 F2d 548 (CA 8, 1970), *cert den,* 401 US 978; 91 S Ct 1208; 28 L Ed 2d 328 (1971). Herein, however, the trial court found that defendant purposefully absented himself *and* absconded meeting both specific and general intent standards.

fugitive and he cannot now complain of lack of notice. See *United States v DePugh,* 434 F2d 548 (CA 8, 1970). Had defendant not purposefully absented himself from the court's jurisdiction, he would have received actual notice of the trial date.

Defendant's conviction is affirmed.