# FRANCE *v.* CONNOR.

ERROR TO THE SUPREME COURT OF THE STATE OF WYOMING.

No. 68. Argued May 2, 3, 1895. — Decided March 2, 1896.

Section 18 of the act of Congress of March 3, 1887, c. 397, conferring and regulating the right of dower, applies to the Territory of Utah only, and not to other Territories of the United States.

THIS was a petition for the assignment and setting off of dower in lands in the county of Carbon and Territory of Wyoming, filed April 1, 1889, in the district court for that county, and alleging that the plaintiff on February 7, 1887, intermarried with James France, then and until his death a resident and citizen of that county and Territory; that he died August 21, 1888, intestate, leaving the plaintiff his widow, and having been seized, during the marriage, of an estate of inheritance in land situated in that county, and fully described in the petition; that upon his death the plaintiff, by virtue of the marriage, became entitled to dower in these lands, which had never been assigned or set off to her, and which she had never received any compensation or equivalent for, or at any time lawfully released her right to; that on March 16, 1888, he, being insolvent, made an assignment, according to the laws of the Territory, to the defendants, for the benefit of his creditors, of all his property, including these lands; and that the defendants took and since held possession of these lands, and refused to assign and set off to the plaintiff her dower therein. The defendants filed a general demurrer, which was sustained, and judgment entered for the defendants.

The plaintiff filed a petition in error in the Supreme Court of the Territory, which, upon the admission of the State of Wyoming into the Union, was entered and argued in the Supreme Court of the State, and the judgment affirmed, upon the ground that the act of Congress of March 3, 1887, c. 397, § 18, did not apply to the Territory of Wyoming. 3 Wyoming, 445. The plaintiff sued out this writ of error.

*Mr. Charles N. Potter* and *Mr. A. B. Browne* for plaintiff in error.

*Mr. Samuel Shellabarger* for defendants in error.

*Mr. Melville C. Brown* filed a brief for same.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By a statute of the Territory of Wyoming, passed December 10, 1869, and embodied in the subsequent codes of the Territory, "Dower and the tenancy by the curtesy are abolished, and neither husband nor wife shall have any share in the estate of the other, save as herein provided." Wyoming Stat. 1869, c. 41, § 1; Compiled Laws of 1876, c. 42, § 1; Rev. Stat. of 1887, § 2221.

The single question in this case is whether this provision of the territorial statute has been annulled or superseded by section 18 of the act of Congress of March 3, 1887, c. 397, conferring and regulating the right of dower; or, in other words, whether this section applies to the Territory of Utah only, or extends to all the Territories of the United States. In order to determine this question, it becomes necessary to consider the scope and the connection of the various parts of the act. 24 Stat. 635.

The act is entitled "An act to amend an act entitled 'An act to amend section fifty-three hundred and fifty-two of the Revised Statutes of the United States, in reference to bigamy, and for other purposes,' approved March twenty-second, eighteen hundred and eighty-two."

Sections 1 and 2 relate to testimony in prosecutions for bigamy, polygamy or unlawful cohabitation. Sections 3–5 define and punish the offences of adultery, incest and fornication. These five sections do not mention the place of commission of any offence; and may perhaps be held to include "any Territory, or other place over which the United States have exclusive jurisdiction," since so much of the act of March 22, 1882, c. 47, referred to in the title of this act, as defined and punished offences, expressly included any such Territory or place. 22 Stat. 30. But upon the question whether such provisions apply to the District of Columbia there have been conflicting opinions. *United States* v. *Crawford*, 6 Mackey, 319; *Knight* v. *United States*, 5 D. C. App. —. And we are not now required to determine the application of those provisions of the act of 1887.

The next three sections of this act are in terms limited to the Territory of Utah. Section 6 relates to the institution of

prosecutions for adultery; section 7, to the powers of commissioners of the courts; and section 8, to the powers of the marshal and his deputies as peace officers.

Sections 9 and 10 relate to evidence, by certificate or otherwise, of marriages " in any of the Territories of the United States."

Section 11 disapproves and annuls all laws enacted by the legislature of the Territory of Utah, providing for or recognizing the capacity of illegitimate children to inherit or to be entitled to any distributive share in the estate of their father; and enacts that no illegitimate child shall hereafter be entitled to inherit from the father, or to receive any distributive share in his estate, unless born within twelve months after the passage of the act, or made legitimate under the act of Congress of March 22, 1882, c. 47, § 7. See *Cope* v. *Cope*, 137 U. S. 682, 688.

Section 12 disapproves and annuls all statutes of the Territory of Utah, conferring jurisdiction upon the probate courts, other than over estates of deceased persons, or over guardianships of the persons and property of infants or insane persons; and transfers the jurisdiction so withdrawn to the district courts of the Territory.

Section 13 directs that proceedings shall be instituted to forfeit and escheat to the United States property obtained or held by corporations in violation of the act of June 1, 1862, c. 126, § 3, (12 Stat. 501,) or of section 1890 of the Revised Statutes — each of which provides that " no corporation or association for religious or charitable purposes shall acquire or hold real estate in any Territory, during the existence of the territorial government," of a greater value than $50,000 — and that the proceeds of the forfeiture shall be applied to common schools " in the Territory in which such property may be ; " but that houses of worship, parsonages and burial grounds shall be exempt from forfeiture. The terms of the acts referred to, as well as those of the section itself, show that it extends to all the Territories. And section 14 provides for the discovery of documents in such proceedings " in any Territory of the United States."

Sections 15, 16 and 17 disapprove and annul the acts of the legislature of the Territory of Utah, and of the so-called government of the State of Deseret, creating or continuing the Mormon corporations known as The Perpetual Emigrating Fund Company and The Church of Jesus Christ of Latter Day Saints. See *Mormon Church v. United States*, 136 U. S. 1.

Then comes section 18, relating to dower, the extent and effect of which are now in question.

Then follow seven sections, each of which is restricted, in terms, to the Territory of Utah. Section 19 requires the judges of probate in Utah to be appointed by the President of the United States, with the consent of the Senate; and annuls the laws of Utah providing for their election by the territorial legislature. Section 20 makes it unlawful for women to vote at any election in Utah; and annuls all laws of Utah providing for their registration or voting. Section 21 annuls all laws of Utah providing for numbering or identifying the votes at elections. Section 22 abolishes the election districts, and the apportionment of representatives, established by the legislature of Utah; provides for new election districts, and a new apportionment; and declares that none but citizens of the United States shall be entitled to vote at any election in that Territory. Section 23 temporarily continues in force in Utah provisions of section 9 of the act of 1882 concerning the registration of voters and the conduct of elections. Section 24 requires of voters, officers and jurors in Utah an oath to obey this act and those of which it is an amendment; and disqualifies those convicted under this act, or under the act of 1882, or guilty of polygamy or of cognate offences. Section 25 abolishes the office of superintendent of schools, created by the laws of Utah; requires a commissioner to be appointed instead by the Supreme Court of the Territory; and prescribes his duties.

Section 26 (which might perhaps have been more appropriately inserted after section 13 or 14) provides that all religious societies may hold, through trustees nominated and appointed as therein directed " in a Territory," real estate necessary for houses of worship, parsonages and burial grounds.

The 27th and final section annuls all laws of the so called State of Deseret, or of the Territory of Utah, for the organization of the militia; and requires the militia of Utah to be organized under and subjected to the laws of the United States.

The leading provisions of section 18 are as follows:

"(a) A widow shall be endowed of third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she shall have lawfully released her right thereto.

"(b) The widow of any alien who at the time of his death shall be entitled by law to hold any real estate, if she be an inhabitant of the Territory at the time of such death, shall be entitled to dower of such estate in the same manner as if such alien had been a native citizen."

The whole section was taken from the statutes of the State of New York, with little more than verbal changes, one of which was a substitution of " the Territory " for " this State " in the second sentence, just quoted. N. Y. Rev. Stat. pt. 2, c. 1, tit. 3, §§ 1–8.

It was argued for the plaintiff in error that these words, " the Territory," not being restricted to the Territory of Utah, mean any Territory in which the land lies of which a widow seeks to be endowed.

To this it was answered that, if such had been the intention of Congress, it would have been expressed, either by such general words as " a Territory," or " any Territory," or else, as in section 13, by such a definition as " the Territory in which such property may be;" and that the words " the Territory," without more, in section 18, grammatically and naturally refer to the last antecedent, which is the Territory of Utah, mentioned in section 17. But there are broader considerations leading to the same result.

Most of the other sections of the act relate to the Territory of Utah only; and, whenever it is intended to include other Territories in them, the intention is expressed in so many words, either in the section itself, or in earlier statutes to which it distinctly refers.

Not only the three sections which immediately precede section 18, but the seven sections which immediately follow it, are expressly restricted to the Territory of Utah.

The restriction to the Territory of Utah of the provisions denying the right of voting to women, in section 20, and to polygamists, in section 24, is the more marked, because women had the right to vote in the Territory of Wyoming; Wyoming Rev. Stat. of 1887, § 1103; and the act of Congress of 1882, referred to in section 24, had prohibited polygamists from voting in any Territory of the United States. Act of March 22, 1882, c. 47, § 8; 22 Stat. 31.

The only section, other than section 18, in the act of Congress of 1887, which affects the title that any member of a man's family shall take in his estate, is section 12, enacting that illegitimate children shall take no share by descent or distribution in the estate of the father; and this section is restricted to the Territory of Utah, although section 7 of the act of 1882, referred to in the saving clause of this section, legitimated the issue of Mormon marriages "in any Territory of the United States." 22 Stat. 31.

The well known fact, that the practice of plural marriages was more common and more firmly rooted in Utah than in any other Territory, afforded special reasons for protecting the lawful wife and children, by reinstating in that Territory the rules of the common law, securing to her the right of dower, and not permitting illegitimate children to inherit from their father.

Under the laws of the Territory of Utah, as existing at the time of the passage of the act of Congress of 1887, all illegitimate children inherited from their father; no right of dower was allowed; and there was no community of property between husband and wife, but all property acquired by either, before or after marriage, remained his or her separate property absolutely. Compiled Laws of Utah of 1876, §§ 677, 1020, 1022.

At the time of the passage of the act of 1887 there were, beside Utah and Wyoming, six other organized Territories of the United States — New Mexico, Arizona, Dakota, Montana,

Idaho and Washington — to all of which section 18 of that act must apply, if it applies to Wyoming. The wife's right of dower in the husband's lands existed in Montana only, and had been expressly abolished by territorial statute in Dakota, Idaho and Washington. In New Mexico and Arizona, as well as in Idaho and Washington, the law of community of property between husband and wife, derived from the civil law, through the laws of Spain and France, prevailed, to a greater or less extent. *Martinez* v. *Lucero*, 1 New Mexico, 208, 216; New Mexico Comp. Laws of 1884, §§ 1087, 1422; *Charauleau* v. *Woffenden*, 1 Arizona, 243; Arizona Comp. Laws of 1877, §§ 1968, 1977; Dakota Civil Code of 1877, §§ 78, 779; Montana Stat. February 11, 1876; Idaho Stat. January 6, 1875, §§ 2, 9-11; Washington Code of 1881, §§ 2409-2412, 2414.

Although Congress has the undoubted power to annul or modify at its pleasure the statutes of any Territory of the United States, yet an intention to supersede the local law is not to be presumed, unless clearly expressed. *Davis* v. *Beason*, 133 U. S. 333; *Cope* v. *Cope*, 137 U. S. 682.

It cannot be presumed that Congress, in an enactment which was peculiarly called for in the Territory of Utah, intended to make so important a change in the law of real property in other Territories of the United States.

For these reasons, which are substantially those upon which the court below proceeded, its

*Judgment is affirmed.*