## FALK *v.* THE UNITED STATES.

CRIMINAL LAW; ADULTERY; FLIGHT OF ACCUSED DURING TRIAL, EFFECT OF; PREJUDICIAL ERROR; APPELLATE PRACTICE.

1. Section 3 of the Act of Congress of March 3, 1887, chapter 397, relating to the crime of adultery, by reason of the generality of its language, applies to this District; *following* Knight *v.* United States, 6 App. D. C. 1, and Chase *v.* United States, 7 Id. 149.

2. In all cases involving less than capital punishment, when the trial has once begun, the flight or escape of the accused does not preclude the court from proceeding with the cause and receiving the verdict of the jury in the absence of the defendant.

3. In a criminal prosecution, it is not error for the trial court to examine two of the jurors impaneled therein, upon their *voir dire*, to determine their competency to sit as jurors in a case to follow, where such action is not shown to have been prejudicial to the accused.

4. Where an appeal is taken, not upon exceptions, but after the overruling of motions for a new trial and in arrest of judgment, counsel for the parties can not properly, by stipulation, import into the record something that transpired at the trial with a view to obtaining its review by this court.

No. 916.   Submitted November 8, 1899.   Decided December 5, 1899.

HEARING on an appeal by the defendant from a judgment

of the Supreme Court of the District of Columbia upon a verdict of guilty in a prosecution for adultery. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin Forrest* and *Mr. Edmund Burke* for the appellant:

1. The Act of Congress of March 3, 1887, does not apply to the District of Columbia, and the offense of adultery is not here punishable under that act. See *France* v. *Connor*, 161 U. S. 65, in which case the decision of this court in *Knight* v. *United States*, 6 App. D. C. 1, is clearly overruled.

2. The court had no power or authority to proceed with the trial and hear and receive testimony against the defendant for the consideration of the jury during the absence of defendant, while he was not represented by counsel, and receive a verdict rendered by the jury under such circumstances. Is the crime of adultery, under the statute, a felony in the District of Columbia? and, if so, had the court any right to try the defendant during his absence, no matter how that absence may have been caused? In this jurisdiction there have been but few decisions throwing light upon the dividing line between misdemeanors and felonies. The third section of the statute under which the prosecution was instituted and the defendant indicted provided punishment in the penitentiary, but does not give a grade to the offense, though the statute to which it is an amendment and providing for the punishment of an offense of a kindred nature denominates the offense a misdemeanor and provides for its punishment accordingly. The different States have passed at different times statutes defining what crimes shall be misdemeanors and what felonies, and the line of demarcation has invariably been the walls of the penitentiary. The following are a few of the State decisions upon the subject: *State* v. *Goddard*, 69 Me. 181; *Comm.* v. *Pemberton*, 118 Mass. 36; *People* v. *Hughes*, 137 N. Y. 33; *In re Steavens*, 52 Kans. 56; *Miller* v. *State*, 58 Ga. 203; *People* v. *War*, 20 Cal. 117; *State* v. *Waller*, 43 Ark. 381; *In re Pratt*, 19 Col. 138;

*State* v. *Green,* 66 Miss. 631; *State* v. *Melton,* 117 Mo. 619; *Tharp* v. *Comm.,* 3 Met. (Ky.) 413; 4 Am. & Eng. Encyc. L. 651; *People* v. *Lyon,* 99 N. Y. 210.

The statute has been passed upon by the Utah courts, and the offense declared a felony. *United States* v. *West,* 7 Utah, 439; *United States* v. *Jones,* 5 Utah, 553. In our local courts this statute, so far as the grade of crime is concerned, has never been passed upon, and in only two cases have the courts of this District determined what a felony is. *United States* v. *Cross,* 1 MacA. 149; *United States* v. *Brady,* 1 Mack. 594. See, also, *Callan* v. *Wilson,* 127 U. S. 540. In *Mackin* v. *United States,* 116 U. S. 348, the Supreme Court defines what are infamous punishments and what infamous crimes. Adultery is declared to be an offense involving moral turpitude in *Pollard* v. *Lynn,* 91 U. S. 228.

Here, then, we have a crime, adultery, an infamous one, the punishment of which is infamous, and involving moral turpitude. How many more ingredients are required to constitute an offense to make it a felony? If the crime charged in the indictment against the defendant be a felony, then what results? In *Lewis* v. *United States,* 146 U. S. 370, the principle is enunciated that after indictment found nothing shall be done in the absence of the prisoner. While this rule has at times, and in the cases of misdemeanors, been somewhat relaxed, yet in felonies, it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial. If he should voluntarily escape and remain away during his trial, the court has no power to proceed to verdict during his absence. It is not within the power of the prisoner to waive it. 1 Chitty Cr. L. 636; *Pine* v. *Comm.,* 18 Penna. St. 103; Whart. Pl. and Pr. 540; *Wade* v. *State,* 12 Ga. 25; *Sneed* v. *State,* 5 Ark.; *State* v. *Almond,* 64 N. C. 364; *People* v. *Higgins,* 59 Cal. 358; *Hamilton* v. *Comm.,* 16 Penna. S. R. 129; *State* v. *Matthews,* 20 Miss. 55; *Stafford* v. *People,* 1 Parker C. R. 474; *Eliza* v. *State,* 39 Ala. 693. The principle

upon which these numerous decisions rest is apparent. The law is a jealous guardian of the life and liberty of the citizen. See, also, *People* v. *Kohler,* 5 Cal. 72 ; *People* v. *Beauchamp,* 49 Cal. 41 ; *Hooker* v. *Comm.,* 13 Grat. 763 ; *Clark* v. *State,* 4 Hemp. R. 254 ; *Clark* v. *State,* 5 Humph. 254 ; *Hutchinson* v. *State,* 3 Cald. (Tenn.) 97 ; *Wilt* v. *State,* 5 Cald. (Tenn.) 11 ; *State* v. *Smith,* 90 Mo. 37 ; Cooley on Con. Lim. p. 388, and cases cited in note 2 ; Clark's Crim. Proc., Sec. 148.

Should the court find that under the law the offense charged is not a felony, then what are the defendant's rights in a case like the present and under the circumstances existing ? The several provisions of the Constitution of the United States bearing upon the question of trial by the jury are : Sec. 2, Art. 3 ; Art. V and VI of the Amendments. As to the construction of these provisions, see *Boyd* v. *United States,* 116 U. S. 616. Is the offense charged a crime within the meaning of Article 3 ? Is it a criminal prosecution within the terms of the Sixth Amendment ? The answer to these queries is found in *Callan* v. *Wilson,* 127 U. S. 540. Is it an infamous crime ? Is the punishment inflicted an infamous one ? Clearly so, as shown by the ruling of the Supreme Court in *Mackin* v. *United States,* 116 U. S. 348. In view of the provisions of the Constitution and these authorities, the defendant could not be tried during his absence and without the assistance of counsel, nor could he waive the right to confront the witness against him.

3. The court had no power, after the jury was sworn to try the issue between the United States and Falk and before such trial was concluded, to adjourn the trial until the following day, respite the jury, and then swear the members of said jury upon their *voir dire* in a murder case and provisionally accept two members thereof, and then upon the following day resume the trial of this cause with the jury as originally impaneled. See *Hopt* v. *Utah,* 110 U. S. 574 ; *Lewis* v. *United States,* 146 U. S. 370.

*Mr. T. H. Anderson,* United States Attorney for the District of Columbia, and *Mr. Ashley M. Gould,* Assistant Attorney, for the United States:

If a defendant, whether on trial for a felony or misdemeanor, is on bail and absents himself voluntarily during his trial, his voluntary absence will be deemed to be a waiver of his right to be present. *Sahlinger* v. *People,* 102 Ill. 241; *Gore* v. *State,* 52 Ark. 285; *Lynch* v. *Comm.,* 88 Penna. St. 189; *Hill* v. *State,* 17 Wis. 697; *Price* v. *State,* 36 Miss. 531; *Barton* v. *State,* 67 Ga. 653; *United States* v. *Loughery,* 13 Blatch. 267; *State* v. *Kelly,* 97 N. C. 404; *McCorkle* v. *State,* 14 Ind. 39; *Fight* v. *State,* 7 Ohio 181.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant, Maximilian W. Falk, was indicted in the Supreme Court of the District of Columbia on April 4, 1898, for the crime of adultery under the third section of the Act of Congress of March 3, 1887, Ch. 397 (24 Stat. 635). He pleaded not guilty, and was released from custody upon his giving bail or entering into recognizance to appear for trial when called. On January 23, 1899, the case was called for trial and the trial was entered upon, and some of the testimony on behalf of the prosecution was taken, the appellant being present with his counsel. The trial, however, was not finished on that day, and the jury was respited until the following day. At the opening of the court on the following day, January 24, 1899, the trial was resumed. The appellant was called, but failed to respond; and it appeared that he had absconded and left the jurisdiction. His counsel thereupon withdrew from further connection with the case; and the trial proceeded in the absence of the appellant, the testimony for the prosecution being resumed and concluded. The case was given to the jury, and the jury returned a verdict of guilty as indicted. When, upon the coming in of the jury to render their verdict, the

appellant was called to hear the verdict, he again failed to respond, and the verdict was received in his absence.

New counsel then appeared for the appellant, and filed a motion for a new trial, and a motion in arrest of judgment. But the court declined to hear either motion at that time, on the ground, as stated by it and set forth in the record, that "during the trial the defendant escaped, and it was announced at the bar of the court, by his then counsel, that he had left the jurisdiction, and the court has no information that he has returned to the jurisdiction or surrendered himself into custody, or intends to do so."

A bench warrant having been issued for his apprehension, the appellant was taken under it in the city of New York, and he was brought back to this District and committed to prison. He was subsequently brought into court; and the motions for a new trial and in arrest of judgment were then argued, and were overruled or denied, and the prisoner was sentenced to a term of imprisonment with labor for six months in the penitentiary at Moundsville, in the State of West Virginia. From this judgment he has prosecuted the present appeal.

There are certain other facts also, which are set forth in the transcript of record before us, and which it is proper to mention, inasmuch as they constitute the basis of one of the assignments of error argued in this court.

It appears that at or about the time of the adjournment of the court on the first day of the trial, it was desired to prepare for the trial of the next ensuing case, which was an indictment for murder, and to ascertain how many of the jurors on the regular panel for the term were qualified to sit therein, so that the marshal might summon the requisite number of talesmen if any should be needed. Two of the jurors in the appellant's case, who were on the regular panel, were thereupon examined on their *voir dire* as to their competency to serve as jurors in the murder case, and were accepted as qualified. They afterwards actually served

in the murder case; but they were not sworn in the murder case at this time, nor was the murder case then called for trial. This proceeding is claimed to have been an irregularity that vitiated the trial of the appellant.

There is no bill of exceptions in this case. A reversal of the judgment is sought upon grounds claimed to be apparent on the record. The assignments of error are five in number; but they may be reduced to three propositions, as follows:

(1) That the act of March 3, 1887, under which the prosecution was had, does not apply to the District of Columbia, and therefore that the offense of adultery is not here punishable under that act.

(2) That it was error in the court below to allow the trial to proceed in the absence of the appellant, after he had absconded.

(3) That it was error to examine, outside of the trial of this cause, two of the jurors in the cause on their *voir dire* as to their competency to sit as jurors in a murder cause thereafter next to be called for trial.

1. With reference to the first of these propositions, as conceded by counsel for the appellant, this court has heretofore considered the question in two cases, that of *Knight* v. *United States*, 6 App. D. C. 1, and that of *Chase* v. *United States*, 7 App. D. C. 149; and has held adversely to the contention of the appellant. But it is suggested that we review and revise our opinion in those cases, in view of the more recent decision of the Supreme Court of the United States in the case of *France* v. *Connor*, 161 U. S. 65. We find nothing, however, in the case of *France* v. *Connor* that requires us to modify anything that has been said by us in the previous cases.

The case of *France* v. *Connor* arose in the State (then Territory) of Wyoming; and the question in it was, whether the 18th section of the Act of Congress of March 3, 1887, relative to dower, applied to the Territory of Wyoming, as well as to the Territory of Utah, which undoubtedly was the

place for which the statute was principally intended, there being in Wyoming at the time a territorial statute in force which abolished dower. The question was whether the Act of Congress nullified the statute of Wyoming, and revived the right of dower in that Territory. This question was answered in the negative by the Supreme Court, which held, first, that a proper construction of the act restricted the operation of section 18, relative to dower, to the Territory of Utah alone; and secondly, on broader grounds, that, in an enactment peculiarly applicable to the conditions existing in the Territory of Utah, it was not to be presumed that Congress intended to supersede or annul the local law of any other Territory in regard to real estate. It is upon the authority of this latter proposition that it is suggested that we should revise our opinion in the case of *Chase* v. *United States*. The argument is that, there being an old statute of Maryland of the year 1715 in force in this District, for the punishment of adultery by a fine of 1,200 pounds of tobacco, it is no more to be presumed that Congress intended to supersede the criminal law of any other place subject to its exclusive jurisdiction than the local law of real estate of such jurisdiction. It is also argued, that it is not to be presumed that Congress intended that the act of March 3, 1887, should in any of its provisions apply to the District of Columbia, unless the intent appears clearly and unequivocally on the face of the statute.

But we think that both of these arguments were fully considered in our former opinions; and we see no reason to depart from the conclusion therein reached.

Referring to the first five sections of the act, which are general in their language and not restricted to any special Territory or place under the exclusive jurisdiction of the United States, the Supreme Court said in the case of *France* v. *Connor*:

"These five sections do not mention the place of commission of any offense; and may perhaps be held to include

any Territory or other place over which the United States have exclusive jurisdiction, since so much of the Act of March 22, 1882, chapter 47, referred to in the title of this act as defined and punished offenses expressly included any such Territory or place.   22 Stat. 30.   But upon the question whether such provisions apply to the District of Columbia there have been conflicting opinions.   *United States* v. *Crawford,* 6 Mackey, 319; *Knight* v. *United States,* 6 App. D. C. 1.   And we are not now required to determine the application of these provisions of the act of 1887."

We fail, therefore, to find in this case anything adverse to the views held by us in the case of *Knight* v. *United States,* and in the case of *Chase* v. *United States*; and we reaffirm the conclusion reached in those cases, that section 3 of the act of March 3, 1887, chapter 397, by reason of the generality of its language, applies to the District of Columbia, as well as to the Territory of Utah.

2. The second proposition advanced on behalf of the appellant is, that it was unlawful for the court below to proceed with the trial after the appellant had absconded and departed out of the jurisdiction.

This proposition is supported by able and ingenious argument, and by some adjudications by courts of eminent respectability.   But to the soundness of it we can not assent. It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced.   The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it.   For by the statute (Rev. Stat. of U. S., Sec. 1015) he is entitled as a matter of right to be enlarged upon bail "in all criminal cases where the offense is not punishable by death;" and, therefore, in all such cases he may by absconding prevent a trial.   This would be a

travesty of justice which could not be tolerated; and it is not required or justified by any regard for the right of personal liberty. On the contrary, the inevitable result would be to abridge the right of personal liberty by abridging or restricting the right now granted by the statute to be abroad on bail until the verdict is rendered. And this the counsel for the appellant appear candidly to admit. But we do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty.

It is true, as contended for by counsel for the appellant, that Mr. Justice Cooley, in his excellent work on Constitutional Limitations, has laid down the rule as follows:

" In cases of felony, where the prisoner's life or liberty is in peril, he has the right to be present, and must be present, during the whole of the trial and until final judgment. If he be absent, either in prison, or by escape, there is a want of jurisdiction over the person, and the court can not proceed with the trial, or receive the verdict, or pronounce the final judgment. But misdemeanors may be tried in the absence of the accused."

And the cases which he cites in the note to the passage seem generally to support the doctrine so announced. But we think that the doctrine is too broadly expressed, and that all the later cases, with apparent unanimity, repudiate it, in so far as it applies to cases, less than those involving capital punishment, where the absence of the accused person is the result of his own absconding after the beginning of the trial. We think that the true rule, so far as the matter of escape is concerned, is well expressed in the case of *United States* v. *Loughery et. al.*, 13 Blatchf. 267, where it was said :

" The next ground relied upon is, that the accused were not present during the whole of the trial and when the verdict was rendered. But the absence of the accused does

not affect the proceedings, when it arises from the fact that after the trial commenced the accused escaped from custody, and his attendance can not for that reason be had. The right of these defendants to be present during their trial was lost when they broke jail and escaped. Certainly, great inducements to escape during trial would be held out were it the law that by an escape further proceedings in a trial will be prevented. I see no reason for giving that effect to an escape, and I am furnished with no authority for the proposition."

To the same effect are the cases of *Sahlinger* v. *The People*, 102 Ill. 241; *Gore* v. *State*, 52 Ark. 285; *Lynch* v. *Commonwealth*, 88 Penna. St. 189; *Hill* v. *State*, 17 Wis. 675; *Price* v. *State*, 36 Miss. 531; *Barton* v. *State*, 67 Ga. 653; *State* v. *Kelly*, 97 N. C. 404; *McCorkle* v. *State*, 14 Ind. 39; *Fight* v. *State*, 7 Ohio, 181; *State* v. *Wamire*, 16 Ind. 357; *United States* v. *Davis*, 6 Blatchf. 464. See, also, *Reynolds* v. *United States*, 98 U. S. 145, where the Supreme Court of the United States said with reference to the unlawful act of a defendant in procuring the absence of a witness against him:

" The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he can not complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequence of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away he can not insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated."

In the case of *Lynch* v. *Commonwealth*, 88 Penna. St. 189, the Supreme Court of Pennsylvania said:

" There is no reason for holding that mere voluntary

absence at the rendition of the verdict, by one out on bail, who is called and does not appear, is a ground for reversing a sentence regularly passed. One so absent waives his privilege. What can be done but to call him? Is the jury to be held until he appears, and if so, how long? Not being in custody, he can not be had. If the jury be discharged, what is the legal consequence? Is it a mistrial, or can he plead the discharge in bar? Is his forfeiture of bail a legal substitute for conviction? And if the discharge be no bar, the offense being a bailable one, how will a similar result be prevented at the second or any subsequent trial? Surely the interests of justice can not be so trifled with."

In the case of *State* v. *Kelly*, 97 N. C. 404, the Supreme Court of North Carolina said:

" The court will always require the presence of the prisoner in court during the trial, if he be in close custody of the law, unless in case the prisoner expressly himself, and not by counsel, waives his right to be present, but the court may require it, if it shall deem it advisable to do so. When, however, the prisoner is not in close custody, but is only under recognizance for his appearance, the court will not begin a trial in his absence, unless he expressly waives his right to be present. If, however, he be under recognizance for his appearance, is present when the trial begins, and afterwards, pending it, he voluntarily and on purpose absents himself—as when he flees the court—he must be deemed to have waived his right to be present during the remainder of the trial, while he is so absent, and will not be entitled to be discharged, or to have a new trial, because he was so absent. In such case, he has fair opportunity to be present, and might, and ought, as matter of duty, to be; if he is not, by the strongest, if not conclusive implication, he consents to be, and is, voluntarily absent, and waives his right. He has no right to flee; he is not bound to do so; he flees at his peril, and is justly held to take the consequences of his own unlawful conduct. It

would savor of absurdity and positive injustice, when a party charged with crime thus flees, to allow him to take advantage of his own wrong, and obtain his discharge or a new trial. A party charged with a felony less than capital has the right to give bail and be at large, unless at the trial the court shall order him into close custody. In such cases, if the defendant fly, pending the trial, the court is not bound to stop the trial and discharge the jury, and thus give the defendant a new trial. To do so would compromise the dignity of the court, trifle with the administration of justice, and encourage guilty parties to escape. The defendant has no right, fundamental or otherwise, that renders such absurd practice and procedure necessary."

In the case of *Sahlinger* v. *The People,* 102 Ill. 241, the Supreme Court of Illinois said:

"Where a prisoner, after a trial has begun, wrongfully and voluntarily abandons the courtroom, and refuses to appear, he must be regarded as having waived a right which is guaranteed to him if he sees proper to avail of it, and the court is under no obligation to stop the trial until the defendant thinks proper to return; but in such a case the court would not transcend any of its legitimate powers by proceeding with the case to final judgment. The constitutional right of a prisoner to appear and defend in person and by counsel, to demand the nature and cause of the accusation, to meet the witnesses face to face, was conferred for the protection and benefit of one accused of a crime; but like many other rights, no reason is perceived why it may not be waived by the prisoner. . . . He can not be permitted to take advantage of his own wrong, and thus defeat the ends of justice. It was the defendant's own fault that he was not present when the verdict was rendered."

But it is unnecessary to multiply citations. The rule to be derived from the authorities is that, in all cases involving less than capital punishment—for some of the authorities make an exception in regard to that class of cases—

when a trial has once been begun, the flight or escape of the accused person does not preclude the court from proceeding with the cause and receiving the verdict of the jury in the absence of the defendant so caused by his own wrongful act. And what was said by the Supreme Court of the United States in the case of *Lewis* v. *United States*, 146 U. S. 370, is not antagonistic to this position. There the court said :

"A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has, at times and in cases of misdemeanors, been somewhat relaxed, yet in felonies it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial. 'It would be contrary to the dictates of humanity to let ·him waive the advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defense with indulgence.' *Prine* v. *The Commonwealth*, 18 Penna. St. 103, 104, per Gibson, C. J. And it appears to be well settled that, where the personal presence is necessary in point of law, the record must show the fact. Thus in a Virginia case, *Hooker* v. *The Commonwealth*, 13 Grat. 763, 766, the court observed that the record showed that on two occasions during the trial, the prisoner appeared by attorney, and that there was nothing to show that he was personally present in court on either day, and added: 'This is probably the result of mere inadvertence in making up the record, yet this court must look only to the record as it is. . . . It is the right of any one, when prosecuted on a capital or criminal charge, "to be confronted with the accusers and witnesses"; and it is within the scope of this right that he be present, not only when the jury are hearing the case, but at any subsequent stage when anything may be done in the prosecution by which he is to be affected.' Thereupon the judgment was reversed. And in the case of

*Dunn* v. *Commonwealth*, 6 Penna. St. 384, it was held that the record in a capital case must show affirmatively the prisoner's presence in court, and that it was not allowable to indulge the presumption that everything was rightly done until the contrary appears. *Ball* v. *United States*, 140 U. S. 118, is to the same effect."

The cases of *Hopt* v. *Utah*, 110 U. S. 574, and *Schwab* v. *Berggren*, 143 U. S. 442, are of the same tenor.

But all this is on the theory, which was a fact in all these cases, that the accused person is a prisoner; that he is in actual custody of the law, and presumptively in durance, and incapable of free volition chargeable to those who are not under arrest. But we know that this presumption is subject to qualification. A person under arrest is capable of waiving the presence of a witness and having the testimony of such witness taken by deposition (*People* v. *Guidici*, 100 N. Y. 563); and he is fully competent to plead guilty, and so to dispense wholly with a trial by jury.

It is unfortunate, perhaps, that in several of the cases cited the fact of escape or absconding by an accused person under indictment, and whose trial has been commenced, has been held to be a waiver of the right of the person to be present at the whole trial and at every stage of the trial. In our opinion, there is no question of waiver here of any right. The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail,

during the pendency of a trial before a jury, to operate as a shield from further prosecution for the crime. An escape is itself a criminal offense, although now rarely punished independently of the principal offense for which the party is held. Can it be that an act, which is in itself a criminal offense, is to be allowed in law to operate as a release from criminal prosecution, and therefore ultimately from criminal liability? We can not think that the constitutional guarantee in its practical application will lead us to any conclusion so absurd. The Constitution was not intended to shield the guilty from the consequences of crime, but to protect the innocent.

3. The third proposition advanced on behalf of the appellant is, that it was error in this cause to examine outside of the trial of the cause two of the jurors, who were concerned in it, on their *voir dire* as to their competency to sit as jurors in a cause thereafter next to be called, which was a case of homicide. But this proposition, also, we must regard as untenable and without foundation in law.

It is not shown, or sought to be shown, how the alleged irregularity, if such it was, which is not quite apparent to us, operated to the detriment of the appellant, or prejudiced his rights in any manner; and we are satisfied that it had no such effect. As well might it be said that it would have been error in the cause prejudicial to the appellant if these two jurors, being witnesses to a will, were at the time indicated taken into the Probate Court to testify to the execution of such will. It is argued that these two jurors might have been confused by this proceeding; but we are unable to see how any confusion, prejudicial to the appellant's cause, could have arisen from such circumstances.

But it is not apparent that we can properly consider this circumstance at all. It is not in the record of the cause. It is true that it has been stipulated by counsel that the facts were as stated; and both the facts and the stipulation are set forth in the transcript which has been brought to

this court. Moreover, the facts are substantially recited in the motion in arrest of judgment filed on behalf of the appellant. And yet all this does not make these facts a part of the record of this case. Counsel can not by agreement make a record for this court. They may stipulate as to a fact, or any number of facts, in a cause; and they may stipulate to dispense with the proof of them. But they may not stipulate to import into a case facts and circumstances which do not belong to it, and which have no proper place in it; and we do not understand the stipulation in this case to attempt anything of this kind. It is an agreement between counsel that during the progress of the trial certain things happened in another cause. Now, it is very true that things happening at that time in another cause might injuriously affect the appellant's cause, and be good ground for judicial investigation and judicial action in this cause. But they do not, for that reason, become part of the record for an appellate tribunal. They were not proper in connection with the motion in arrest of judgment, which was confined strictly to a review of the record of the cause as it then stood. There were two ways of reaching them, if they were deemed material. First, if the appellant's cause was unduly interrupted or improperly interfered with by the interjection of these proceedings in another cause, objection could have been made at the time and exception taken, and error assigned thereon.

It is true that, in answer to this, counsel say that they did not know of the facts at the time. But this statement, under the circumstances, is ambiguous, unsatisfactory and insufficient. Present counsel were not then connected with the case, and may be presumed, for that reason, not to have known these facts. But, if they were facts happening in this cause and injuriously affecting it, they must have been known to the appellant, or to his former counsel; and he and they are chargeable with the knowledge of them. But, if they were not facts happening in this cause, and which

could not have been put upon the record and availed of by exception and writ of error, and of which we may assume that both the appellant and his counsel were wholly ignorant at the time, then it is very plain that the proper way in which to bring them forward is in connection with a motion for a new trial. And this is the second mode in which they might have been imported into the case. But, except under peculiar circumstances, and where injury to the party was clearly manifest, this would not justify their being brought to an appellate tribunal; for ordinarily the appellate tribunal has nothing to do with motions for a new trial.

We are satisfied that there was no error in the action of the court in this regard.

From what we have said it follows, in our opinion, that the trial court committed no error in any of the matters and things herein alleged as error; and that the judgment of that court in the premises should be *affirmed, with costs. And it is so ordered.*